**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

| | | |
|---|---|---|
| APRIL J. M[1] | ) | Case No. EDCV 19-00943-AS |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW M. SAUL, Commissioner | ) | |
| of the Social Security | ) | |
| Administration,[2] | ) | |
| | ) | |
| Defendant. | ) | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's decision is affirmed.

---

[1]   Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]   Andrew M. Saul, the Commissioner of the Social Security Administration, is substituted for his predecessor. See 42 U.S.C. § 405(g); Fed.R.Civ.P. 25(d).

**PROCEEDINGS**

On May 21, 2019, April J. Michles ("Plaintiff") filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits by the Social Security Administration.  (Dkt. No. 1).  The parties have consented to proceed before the undersigned United States Magistrate Judge.  (Dkt. Nos. 9-11n).  On October 15, 2019, Defendant filed an Answer along with the Administrative Record ("AR").  (Docket Entry Nos. 16-17).  On March 18, 2020, the parties filed a Joint Submission ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims.  (Dkt. No. 22).

The Court has taken this matter under submission without oral argument.  See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISIONS**

On August 28, 2008, Plaintiff, formerly employed as a quality assurance and fingerprint clerk, a school aide, and a customer service representative (see AR 39-43, 253, 884-89), filed an application for Disability Insurance Benefits alleging a disability onset date of August 16, 2004.  (See AR 220-23).  Plaintiff's application was denied, initially on December 16, 2008, and, on reconsideration on April 2, 2009.  (See AR 100, 129-30).

*December 3, 2010 Decision*

On October 14, 2010, Plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") Charles E.

Stevenson ("ALJ Stevenson"). (See AR 81-99).  ALJ Stevenson also heard testimony from  medical expert Samuel Nafisi and vocational expert Alan Boroskin. On December 3, 2010, ALJ Stevenson issued a decision denying Plaintiff's request for benefits.  (See AR 105-17).

Applying the five-step sequential process, ALJ Stevenson found at step one that Plaintiff had not engaged in substantial gainful activity from August 16, 2004, the alleged onset disability onset date, though March 31, 2010, her date last insured.  (AR 107).  At step two, ALJ Stevenson determined that Plaintiff had the following severe impairments: "disorder of the cervical spine by disc bulge; disorder of the lumbar spine by disc bulging; status post hysterectomy; irritable bowel syndrome, stable; anxiety; and depression." (AR 107-08).[3]  At step three, ALJ Stevenson determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in the regulations. (AR 108-09).  ALJ Stevenson then found that Plaintiff had the residual functional capacity ("RFC")[4] to perform light work[5] with certain limitations.  (AR 110-16).  At step four, ALJ Stevenson found that Plaintiff was able to perform past relevant work as a fingerprinting clerk and as an administrative clerk, both as actually and generally

[3]     ALJ Stevenson found that Plaintiff's other impairments -- carpal tunnel syndorme in the right hand, and "tennis elbow" in the left hand -- were not medically determinable.  (AR 108).

[4]     A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. § 404.1545(a)(1).

[5]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

1    performed.  (AR 116).  Accordingly, ALJ Stevenson found that Plaintiff
2    had not been under a disability as defined in the Social Security Act
3    from August 16, 2004 through March 31, 2010.  (AR 116-17).

4

5        The Appeals Council granted Plaintiff's request for review of ALJ
6    Stevenson's decision and remanded the matter for further consideration
7    of Plaintiff's maximum RFC and further evaluation of Plaintiff's ability
8    to perform past relevant work.  (AR 123-24).

9

10   *November 2, 2012 Decision*

11

12       On September 6, 2012, Plaintiff, represented by counsel, testified
13   at a hearing before ALJ Tamara Turner-Jones ("ALJ Turner-Jones").  (See
14   AR 35-78).  ALJ Turner-Jones also heard testimony from vocational expert
15   Gloria Lasoff ("VE Lasoff").  On November 2, 2012, ALJ Turner-Jones
16   issued a decision denying Plaintiff's request for benefits. (See AR 11-
17   21).  After making essentially the same findings as ALJ Stevenson's
18   decision at steps one two, and three (see AR 13-15), and finding that
19   Plaintiff had the RFC  to perform light work with certain limitations
20   (see AR 15-19), ALJ Turner-Jones found that Plaintiff was not able to
21   perform any past relevant work.  (AR 19).  At step five, ALJ Turner-
22   Jones determined, based on Plaintiff's age, education, work experience,
23   RFC, and VE Lasoff's testimony, that there were jobs that existed in
24   significant numbers in the national economy that Plaintiff could have
25   performed.  (AR 19-21).  Accordingly, ALJ Turner-Jones found that
26   Plaintiff had not been under a disability as defined in the Social
27   Security Act from August 16, 2004 though March 31, 2010.  (AR 21).

28

The Appeals Council denied Plaintiff's request for review of ALJ Turner-Jones's decision (<u>see</u> AR 5).   (AR 1-3).   Plaintiff sought judicial review of ALJ Turner-Jones's decision.   On September 2, 2015, the Court vacated ALJ Turner-Jones's decision and remanded the matter for further proceedings based on ALJ Turner-Jones's failure to properly assess Plaintiff's credibility and Plaintiff's husband's credibility. (<u>See</u> AR 942-52).

*July 27, 2016 Decision*

On May 27, 2016, Plaintiff, represented by counsel,  testified at a hearing before ALJ Kenneth E. Ball ("ALJ Ball").   (<u>See</u> AR 879-907). ALJ Ball also heard testimony from vocational expert David Rinehart ("VE Rinehart")  On  July  27,  2016,  ALJ  Ball  issued  a  decision  denying Plaintiff's request for benefits.   (<u>See</u> AR 854-70).   At step one, ALJ Ball  found  that  Plaintiff  had  not  engaged  in  substantial  gainful activity from August 16, 2004 though March 31, 2010.  (AR 856).  At step two,  ALJ  Ball  determined  that  Plaintiff  had  the  following  severe impairments:  "degenerative  disc  disease  of  the  cervical  spine; degenerative disc disease of the lumbar spine; irritable bowel syndrome; anxiety; and depression."  (AR 856).[6]  At step three, ALJ Ball determined that Plaintiff did not have an impairment or combination of impairments that  met  or  medically  equaled  the  severity  of  any  of  the  listed impairments in the regulations.  (AR 857-58).  ALJ Ball then found that Plaintiff had the RFC to perform light work with certain limitations. (AR 858-68).  At step four, ALJ Ball found that Plaintiff was not able

---

[6]   ALJ Ball found that Plaintiff's other impairment -- history of menorrhagia, status post hysterectomy -- was nonsevere.  (AR 856-57).

5

to perform any past relevant work.  (AR 868-69).  At step five, ALJ Ball determined, based on Plaintiff's age, education, work experience, RFC, and VE Rinehart's testimony, that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  (AR 869-70).  Accordingly, ALJ Ball found that Plaintiff had not been under a disability as defined in the Social Security Act from August 16, 2004 though March 31, 2010.  (AR 870).

Plaintiff sought judicial review of ALJ Ball's decision.  On September 19, 2017, the Court vacated ALJ Ball's decision and remanded the matter for further proceedings based on ALJ Ball's failure to properly analyze Plaintiff's subjective complaints and Plaintiff's husband's statements.  (See AR 1372-90).

*March 13, 2019 Decision*

On January 16, 2019, Plaintiff, represented by counsel, testified at a hearing before ALJ Josephine Arno ("ALJ Arno"), who also heard testimony from vocational expert Stephen Schmidt ("VE Schmidt").  (See AR 1349-66).  On March 13, 2019, ALJ Arno issued a decision denying Plaintiff's request for benefits.  (See AR 1322-39).  At step one, ALJ Arno found that Plaintiff had not engaged in substantial gainful activity from August 16, 2004 though March 31, 2010.  (AR 1324).  At step two, ALJ Arno determined that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; irritable bowel syndrome;

anxiety; and depression." (AR 1324-25).[7] At step three, ALJ Arno determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in the regulations. (AR 1325-27).

ALJ Arno then found that Plaintiff had the RFC to perform light work with the following limitations:

> Specifically, lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours out of an eight-hour workday with regular breaks with the requirement to change positions briefly for one to three minutes each hour; sit without limitation during an eight-hour workday with regular breaks; push and pull within the weight limits indicated for lifting and carrying; reach overhead occasionally bilaterally; perform all postural activities occasionally; must work within 100-yards distance from a bathroom; no work requiring a high-quota production rate pace, such as rapid assembly line work; must avoid exposure to unprotected heights and moving mechanical parts of equipment, tools, or machinery; understand, remember, and carry out instructions to perform tasks that are simple and routine, and require only simple work-related decision; [and] have only occasional contact with the public and occasional interaction with coworkers.

(AR 1327-37).

At step four, ALJ Arno found that Plaintiff was unable to perform any past relevant work. (AR 1337). At step five, ALJ Arno determined, based on Plaintiff's age, education, work experience, RFC, and VE Schmidt's testimony, that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (AR 1337-39). Accordingly, ALJ Arno found that Plaintiff had not been under a disability as defined in the Social Security Act from August 16, 2004 through March 31, 2010. (AR 1339).

---

[7] ALJ Arno found that Plaintiff's other impairment -- history of menorrhagia, status post hysterectomy -- was nonsevere. (AR 1324-25).

Plaintiff did not request that the Appeals Council review ALJ Arno's decision, and now seeks judicial review of ALJ Arno's decision, which stands as the final decision of the Commissioner.  See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence.  See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017).  To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion."  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation omitted).  As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).[8]

---

[8]    The harmless error rule applies to the review of administrative decisions regarding disability.  See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

1

2

**PLAINTIFF'S CONTENTIONS**

3     Plaintiff contends that ALJ Arno erred in failing to properly

4  assess Plaintiff's RFC by failing to consider (1) the opinions of

5  Plaintiff's treating physicians (Drs. Amin, Lineback and Flores); and

6  (2) Plaintiff's subjective symptom testimony and the statements of

7  Plaintiff's husband. (See Joint Stip. at 8-14, 22-25).

8

9

**DISCUSSION**

10

11     After consideration of the record as a whole, the Court finds that

12  the Commissioner's findings are supported by substantial evidence and

13  are free from legal error.

14

15  **A.   ALJ Arno Provided Clear and Convincing Reasons for Rejecting**

16      **Plaintiff's Subjective Symptom Testimony**[9]

17

18     When assessing a claimant's credibility regarding subjective pain

19  or intensity of symptoms, the ALJ must engage in a two-step analysis.

20  Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ

21  must determine if there is medical evidence of an impairment that could

22  reasonably produce the symptoms alleged.   Id. (citing Garrison v.

23  Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)). "In this analysis, the

24  claimant is not required to show that her impairment could reasonably

25  be expected to cause the severity of the symptom she has alleged; she

26

27

28     [9]   The Court addresses Plaintiff's claims of error non-
sequentially in order to address the arguments coherently.

need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original)(citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Id. (citation omitted); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." Soc. Sec. Ruling ("SSR")

10

16-3p, 2017 WL 5180304, at *3.[10] SSR 16-3p eliminated the term "credibility" from the Agency's sub-regulatory policy. However, the Ninth Circuit Court of Appeals has noted that SSR 16-3p:

> makes clear what [the Ninth Circuit's] precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

Trevizo, 871 F.3d at 678 n.5 (quoting SSR 16-3p)(alterations omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider: "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at

---

[10] SSR 16-3p, (which became effective on March 28, 2016), is applicable to this case, because it was in effect on the date ALJ Arno's decision became the final decision of the Commissioner, see 20 C.F.R. § 404.968(a)(1) (prescribing sixty-day period to request Appeals Council review). 20 C.F.R. § 404.1529, the regulation on evaluating a claimant's symptoms, including pain, has not changed.

1284; <u>accord Burrell</u>, <u>supra</u>.  However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented.  <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1227 (9th Cir. 2009)(citation omitted).

The ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008)(citation omitted); <u>see Brown-Hunter v. Colvin</u>, 806 F.3d 487, 493 (9th Cir. 2015)("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain;" citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it."  <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

//
//
//

12

1. <u>Plaintiff's Subjective Statements and Testimony</u>[1]

Plaintiff completed a Pain Questionnaire, dated September 4, 2008, (<u>see</u> AR 267-69), in which she described a constant pain in her neck, upper back, lower back, right wrist, upper shoulder, and stomach (irritable bowel syndrome, acid reflux) that spreads down to her legs, and is brought on by any movement, i.e., standing, bending, sleeping, walking, getting dressed, going to the restroom, driving a car, swallowing food, and by sitting for short periods.  (AR 267).  Her pain causes her to stop an activity every ten to fifteen minutes.  (AR 269).  She is able to walk to her home mailbox and to sit (usually lying down on her side) and/or stand for five to ten minutes at a time.  (AR 269).  Her usual daily activities include trying to stand up, taking a hot bath, "eat[ing] something," lying down on the couch for three hours, doing dishes, lying down again for thirty minutes, putting in a load of laundry, lying down again, dressing, making the bed, finishing the dishes, and lying down again.  (AR 268).  Although she can go to the post office or grocery store without assistance, it takes her a couple of days to recover; she tries to have her husband, son or sister drive her for errands and her sister takes her to Bible study.  (AR 268-69).  She is not able to keep up with her chores, and needs assistance with mopping, doing laundry, making dinner, and vacuuming.  (AR 268-69).  She

---

[1]    Plaintiff submitted two Pain Questionnaires and two Adult Function Reports, and testified at four administrative hearings.  The Court assumes, unless it is clear that Plaintiff was referring to a prior time frame, that Plaintiff's statements and testimony about her subjective symptoms referred to the symptoms she was experiencing at the time the statements were made.

is not able to maintain her composure when asked questions.  (Id.).  A doctor told her she was not a good candidate for surgery because her degenerative disc will not improve.  (AR 268).  Whether she has stomach surgery is still in question.  (Id.). The medicine she takes for her pain -- Lexapro 10 mg,[2] Motrin 800 mg, Zantac 300 mg, Pepto Bismol, and heat patches -- takes some of the edge off.  (AR 267).

Plaintiff completed an Adult Function Report, dated September 4, 2008, with the assistance of another person, (see AR 270-77), reporting daily activities that are generally consistent with those alleged in the Pain Questionnaire. She has difficulty sleeping at night because of stomach aches and pain in the back, arm and wrist.  (AR 270-71).  Her conditions affect her ability to dress, bathe, care for her hair, feed herself, and use the toilet. (AR 271).  She needs reminders to brush her teeth, take medicine, and go places.  (AR 272-74).  She prepares her own meals (sandwiches, frozen dinners) once a week; her pain prevents her from preparing food most days and when she cooks dinner once a week, it takes her 2.5 hours during which she has to lie down and rest.  (Id.). She needs help from her husband and sons to do household chores (laundry, grocery shopping, picking up medication, weeding, watering flowers).  (AR 272, 275).  She is able to go out alone, but is afraid that she will not be able to drive herself home, or that she will have a panic attack or her throat will close up.  She shops in stores for

---

[2]    "Lexapro is name-brand escitalopram oxalate, which is used to treat depression and anxiety by helping to restore the balance of serotonin in the brain." Alfred G. v. Berryhill, 2019 WL 134551, *3 n.8 (C.D. Cal. Jan. 8, 2019).

small grocery items once a week or once every other week.  (Id.).  She is able to pay bills (with her husband's help), but cannot count change, handle a savings account, or use a checkbook/money orders (due to issues with adding and subtracting and with her thought process).  (AR 273-74). She no longer has any hobbies and interests because of her pain.  (Id.). She sometimes talks on the phone with others, and she goes to Bible study once a week (her sister takes her) and to church twice a month. Her conditions affect her ability to lift, squat, bend, reach, walk, sit, kneel, talk, hear, stair-climb, see, memory, complete task (she does not finish what she starts), concentrate (she can pay attention for three minutes), understand, follow written and spoken instructions, use her hands and get along with others.  (AR 275).  She does not handle stress well; stress causes her irritable bowel syndrome and acid reflux. (AR 276).  She uses a cane "off & on", and has been  prescribed a back brace, a wrist brace, an elbow brace, and glasses/contacts.  (AR 276).

Plaintiff completed a second Pain Questionnaire, dated March 8, 2009, reporting information that is generally consistent with the statements in the first Pain Questionnaire.  (See AR 297-300). Plaintiff needs to lie on her side with her knees bent, take medication, use a hot heating pad, and take three baths a day for her pain, which is caused by any movement, including sitting and standing for more than three to five minutes.  (AR 297-98).  Rest does not relieve her pain because she is not able to lie down or sit for more than ten to fifteen minutes.  (AR 297).  She is able to stand for ten to fifteen minutes and sit for five minutes at a time before needing to lie down.  (AR

299).  (Id.).  As a result of her pain, she is no longer able to sleep through the night, get dressed without help, do chores, garden, grocery shop alone, drive without an assistant, have a conversation, see friends, finish a sentence, or understand questions asked by others. (AR 298).  She drives her own car to the home of her sister or friend down the street and they then drive her to places.  (Id.)  She is waiting for a breast reduction surgery to help with her back pain, and she is still waiting for a stomach (acid reflux) surgery.  (AR 298).

Plaintiff completed a second Adult Function Report, dated March 8, 2009, with the assistance of her husband, in which she reported information that is generally consistent with the statements in the first Adult Function Report and the second Pain Questionnaire.  (See AR 301-08).  As a result of her conditions, she can no longer eat, bend to go to the bathroom, walk, go to the grocery store, or communicate without crying.  (AR 302).  She prepares her own meals (sandwiches, muffins, frozen dinners) twice a week, which takes her three hours.  (AR 303).  She prepares dinner once or twice a week, but needs help finishing.  (Id.).  She goes outside to try to get mail twice or three times a week, to church once a week, and to the grocery store once a week or once every other week (with her husband, which takes fifteen to twenty minutes).  (AR 304).  She is able to pay bills and use a checkbook/money orders, but she is not able to count change or handle a savings account.  (Id.).  She no longer has any hobbies and interests because of her pain, but prior to her conditions she was able to read, paint, ski and sew.  (AR 305).  Her conditions affect the same abilities

identified in the first Adult Function Report, except for hearing and getting along with others.  (AR 306).  She can lift five pounds, stand for 10 to 15 minutes, sit for 15 minutes, walk to the mailbox or washer and pay attention for five minutes, but she cannot bend, squat, understand (needs to be told five times), or follow written instructions (cannot focus) or spoken instructions (needs to be told two to three times).  (Id.).

At the October 14, 2010 administrative hearing, Plaintiff testified that she has pain in her shoulders, neck and back, right wrist, and stomach.  She has received injections for her shoulders and stomach, and has tried acupuncture, Lexapro patches, Lidoderm[3] patches, medication (strong) such as Robaxin (but no longer Vicodin or Talwin), heat packs and hot baths for her neck and back.  (AR 83-86, 89-91).  She has difficulty standing, sitting, turning and sitting on the toilet, (AR 91-92), and difficulty going to sleep because of the pain and staying asleep because of nightmares.  (AR 86).  On a typical day, she gets up in the morning, tries to make something to eat, sits down for a little (due to fatigue), tries to rinse dishes while sitting on a stool (somebody else loads them), sits down for a little while and starts a load of laundry (her husband carries the basket to the room).  (AR 86-87, 90).  She dresses herself "most of the time," but needs assistance with shoes (except for sandals) because she cannot bend over.  (AR 90).

---

[3]    Lidoderm is a topical analgesic.  Fonseca v. Astrue, 2011 WL 2412627, *4 (C.D. June 10, 2011).

At the administrative hearing on September 6, 2012, Plaintiff testified that her typical activities include driving to the grocery store once a week where she spends fifteen to twenty minutes to shop, going to the hairdresser once a month, and to doctors' appointments. For about four months, she has volunteered, with two other teachers, monitoring crafts projects for twelve children in a classroom at church twice a month for about an hour.  She goes to church services twice a month and attends women's Bible study at the church once a month. She is able to shower but cannot take a bath without help, and she is able to sweep, lift maybe four pounds at a time, and sit for fifteen to twenty minutes before needing to change positions.  (AR 37-38, 44-49, 54).  She spends two to three "bad days" a week lying down, but most of the time she alternates between sitting and standing.  (AR 62-63).  Any kind of work, even simple work, would have caused her stress, because she worried about where the bathroom was and about "being able to get up and move."  (AR 58).  Although she experiences stress around other people, she attends church and Bible study because they are "like a safe haven [] because [she] know[s] they're not out there to hurt [her]."  (AR 59-60).  She was not able to balance a checkbook and pay bills due to difficulty concentrating and stress from worrying about lack of money. (AR 61).  Her irritable bowel syndrome causes her to have bowel movement accidents.  The medication she takes for irritable bowel syndrome does not work.  (AR 52).  She takes Xanax and Lexapro for psychological issues, and uses Lidoderm patches for back pain.  (AR 50-51).

At the May 27, 2016 administrative hearing, Plaintiff testified that she still has pain in her neck, middle and lower back, right shoulder, right knee, right wrist, and migraine headaches (once a week), and her pain is at the same level she experienced during the earlier hearings.  (AR 890-91, 896-97).  To relieve the pain, she sits down and reclines with pillows behind her and her feet on a chair; she gets up more and lies down less because lying down is "more painful."  (AR 892-93).  She tried physical therapy to treat the pain and she now treats her pain by seeing a chiropractor two times a week, taking a two-hour bath every day, and taking prescription medications.  (AR 891, 893).  She is "on the list" for breast reduction surgery to ease her back pain.  (AR 891).  She can sit or stand for fifteen to twenty minutes.  (AR 893-94).  She tries to do chores such as loading the washer and dryer once a week (her husband finishes the job).  (AR 894).  She still has issues with depression in "certain situations," but her depression is not as bad as when she was seeing a psychologist (Dr. Flores).  (AR 895-96).  Although she has a cane, she tries not to use it because she wants to be "independent."  (AR 899).  While she still has issues with irritable bowel syndrome, she has not had any accidents in the car.  (AR 896-97).

At the administrative hearing on January 16, 2019, Plaintiff testified she still experienced the same problems she had at the time of the earlier hearings.  (AR 1352-53).

//

//

19

2.   <u>The ALJ's Credibility Findings</u>

After summarizing Plaintiff's testimony (<u>see</u> AR 1327-28), ALJ Arno found Plaintiff's testimony about the intensity, persistence and limiting effects of her pain and symptoms to be inconsistent with her activities of daily living, the objective medical evidence, and the frequency or extent of treatment.  (<u>See</u> AR 1328-29).

ALJ Arno observed that the physical and mental abilities and the social interactions required for Plaintiff to perform normal activities of daily living, such as preparing meals, rinsing dishes, loading laundry, sometimes sweeping, driving a car, attending church and Bible study, and volunteering at church, are the same as those necessary for obtaining and maintaining employment.  ALJ Arno further observed that such daily activities were inconsistent with Plaintiff's complaints about her difficulties sitting, standing, walking, lifting, squatting, kneeling, understanding, concentrating, getting along with others, and completing tasks because they suggest a higher level of functioning than Plaintiff alleged.  Therefore, ALJ Arno found Plaintiff's ability to participate in such activities to be inconsistent with her statements concerning the alleged intensity, persistence, and limiting effects of her symptoms. (AR 1328-29).

ALJ Arno also found Plaintiff's statements regarding the alleged intensity, persistence, and limiting effects of her symptoms to be inconsistent with the objective medical evidence regarding the duration and frequency of her symptoms.  (AR 1329). For example, ALJ Arno pointed

out that while Plaintiff claimed to be suffering from debilitating pain from her disability onset date to the date last insured, reports of physical examinations in November 2004 and May 2009 revealed that Plaintiff was "in no acute distress," exhibited full muscle strength in her upper and lower extremities and greater range of motion, and was able to squat without difficulty and walk with stability. (AR 579, 758).

In addition, ALJ Arno observed that the degree of Plaintiff's subjective complaints was not comparable to the limited and conservative nature of the treatment Plaintiff received and the lack of any explanation for not seeking more extensive or aggressive treatment options. Therefore, ALJ Arno found Plaintiff's statements concerning the alleged intensity, persistence and limiting effects of symptoms to be inconsistent with the treatment she received. (AR 1329).

After addressing the medical evidence and the opinions of the medical expert (Sami A. Nafoosi, M.D.), Plaintiff's treating physicians (James F. Lineback, M.D., Chirag N. Amin, M.D., and Matthey Huey, M.D.), the medical and psychiatric consultative examiners (Kristof Siciarz, M.D. and Hiruy Gessesse, M.D.) the State Agency medical and psychological consultants (P.N. Ligot, M.D., L.O. Mallare, M.D., G. Johnson, M.D., and M. Abundes-Tienda), Plaintiff's treating psychologist (Nelson J. Flores, Ph.D), and the testimony by Plaintiff's husband (see AR 1329-37), ALJ Arno concluded that:

> In sum, the evidence as a whole supports the residual functional capacity assessed by this decision. The claimant's statements regarding the alleged intensity, persistence, and

1
2
3
4
5
6
        limiting effects of symptoms are inconsistent with the overall
evidence of record and the objective medical evidence does not
support the alleged severity of symptoms.  I find the claimant
has not been deprived of the ability to perform substantial
gainful activity subject to the residual functional capacity
assessed by this decision for any 12-month period during the
relevant period.

(AR 1337).

7
8      3.   <u>Analysis</u>

9

10   As set forth below, ALJ Arno gave clear and convincing reasons,

11 supported by substantial evidence, for finding Plaintiff's testimony

12 about the intensity, persistence and limiting effects of her pain and

13 symptoms not credible.[4]

14   ALJ Arno properly determined that Plaintiff's alleged functional

15 limitations were inconsistent with her ability to perform her activities

16 of daily living, including preparing meals (<u>see</u> AR 45, 86-87, 270, 272,

17 299, 303, 308), rinsing dishes (<u>see</u> AR 45, 87, 90, 269-70, 301), loading

18 laundry (<u>see</u> AR 45, 87, 269-70, 299, 301, 303, 894), sometimes sweeping

19

20      [4]   To the extent that Defendant contends that the Court should
21 not apply a "clear and convincing" standard based on evidence in the
record that Plaintiff was malingering (<u>see</u> Joint Stip. at 26-27), the
22 Court declines to do so.  ALJ Arno did not make a specific finding that
Plaintiff was malingering.   <u>See</u> <u>Robbins</u>, 466 F.3d at 883; <u>see</u> <u>also</u>
23 <u>Garrison</u>, 759 F.3d at 1010 ("We review only the reasons provided by the
ALJ in the disability determination and may not affirm the ALJ on a
24 ground upon which he did not rely."); <u>Connett v. Barnhart</u>, 340 F.3d 871,
874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ
25 asserts."; citing <u>SEC v. Chenery Corp</u>., 332 U.S. 194, 196 (1947) and
<u>Pinto v. Massanari</u>, 249 F.3d 840, 847-48 (9th Cir. 2001)).

26      Likewise, the Court will not consider Defendant's arguments
27 that ALJ Arno properly discredited Plaintiff's testimony based on
Plaintiff's failure to follow up with treatment and the improvement of
28 Plaintiff's impairments with treatment (<u>see</u> Joint Stip. at 31), since
ALJ Arno did not provide those reasons in the decision.

(see AR 46), driving a car (see AR 37-38, 269, 273, 299), attending church and Bible study (see AR 46-47, 60, 274, 305), volunteering at church (see AR 44-45), and grocery shopping (see AR 38, 273, 299, 303-04).  See 20 C.F.R. § 404.1529(c)(3)(1) (a claimant's daily activities are one factor to be considered in evaluating a claimant's symptoms, such as pain).  Plaintiff's ability to engage in such activities, even if she sometimes needed assistance and/or breaks (see AR 38, 45, 87, 268-70, 272, 274, 299, 301, 303-05, 308, 894), rendered Plaintiff's testimony that she spent most of the day lying down and essentially unable to do anything (see AR 48-50, 63, 66-67, 86-93, 268-77, 297-99, 301-08, 892-94) not credible.  See Ghanim, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012)("[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting;" "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); and Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."); see also Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005)(claimant's allegations of disability properly discredited where claimant was able to care for her own

personal needs, cook, clean, shop, interact with her nephew and boyfriend, and manage finances).

ALJ Arno properly discounted Plaintiff's testimony about the alleged intensity, persistence and limiting effects of her symptoms based on inconsistencies between Plaintiff's reported ability to perform such daily activities, even if assistance and/or breaks were sometimes needed, and her testimony about her severe difficulties with sitting, standing, walking, lifting, squatting, kneeling, understanding, concentrating, getting along with others, and completing tasks (see AR 48-50, 54, 267-72, 275, 297-99, 301, 303, 305-06, 896). See Burrell v. Colvin, 775 F.3d 1133, 1138-39 (9th Cir. 2014)("Inconsistencies between a claimant's testimony and the claimant's reported activities provides a valid reason for an adverse credibility determination."; citing Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997).

ALJ Arno properly found that Plaintiff's testimony about the intensity, persistence and limiting effects of her pain and symptoms was not supported by the objective medical evidence (see AR 1329). See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); SSR 16-3p, *5 ("objective medical evidence is a useful indicator to help make

reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").

As the ALJ noted, the objective evidence in the record conflicted with Plaintiff's testimony about her symptoms and functional limitations. See 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). Such evidence included (1) a physical examination on November 2, 2004, reporting that Plaintiff was alert and in no acute distress, walked with a normal gait, had full muscle strength in her lower extremities, could perform tip-toe and heel walking without weakness, and could squat without difficulty (see AR 577-81); (2) a physical examination on November 15, 2008, reporting that Plaintiff had normal movements, did not use an assistive device for ambulation, was able to sit comfortably without shifting, stand from a sitting position and sit up from the supine position without difficulty, showed ranges of motion in the upper and lower extremities within normal limits, did not have pain upon palpation along the paraverterbral area, had a negative bilateral straight-leg raising test, and had normal motor strength, muscle tone, coordination, gait and station (see AR 518-20); (3) a physical examination on June 23, 2009, noting that, although Plaintiff had limited range of motion in the neck and right upper extremity, Plaintiff had a stable gait, stable heel and toe walking, normal station, "walk[ed] with greater flexion that she exhibited on specific

lumbar [range of motion] testing," and had a negative straight-leg raising test (see AR 756-59); (4) an x-ray of the right shoulder August 20, 2009, revealed no fracture or joint subluxation, normal alignment, and no degenerative changes (see AR 763-64); (5) a physical examination on September 4, 2009, noted that, although Plaintiff had limited range of motion in the neck and upper extremities, Plaintiff had stable gait and heel and toe walking  (see AR 771-73); (6) an MRI of the cervical spine on September 18, 2009, showed mild reversal of normal lordosis and mild degenerative changes (see AR 774); (7) a physical examination on October 1, 2009, revealed, inter alia, that Plaintiff's neck was supple and showed a full range of motion without pain and that Plaintiff was alert and oriented and used normal speech (see AR 777-80); and (8) a physical examination on March 10, 2010, revealed, inter alia, that Plaintiff had "[m]ild apparent stress" and was alert, and that, although Plaintiff had limited range of motion in the neck and upper extremities, Plaintiff had stable, slow gait, stable heel and toe walking, normal station, and a negative straight leg-raising (see AR 792-95).  While Plaintiff may interpret the medical record differently, the Court cannot conclude that ALJ Arno's interpretation of the medical record was irrational.  Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

ALJ Arno also properly found that Plaintiff's testimony about the limiting effects of her symptoms was not supported by the conservative nature of her treatment.  As ALJ Arno noted, Plaintiff testified her treatment consisted of only physical therapy, acupuncture, injections,

Lexapro patches, prescription medications (none of which were heavy-duty narcotics), heat packs, and hot baths (see AR 50-51, 84-86, 267, 891-93). See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007)("The ALJ also noted that [the claimant's] physical ailments were treated with over-the-counter pain medication.  We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."; citation omitted); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)(an ALJ may properly rely on the fact that prescribed conservative treatment suggests a lower level of both pain and functional limitation); see also Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999)("[The claimant's] claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received.").

The ALJ's reasons for discounting Plaintiff's testimony about the limiting effects of her pain and symptoms -- inconsistency with activities of daily living, the lack of support in the medical record, and a conservative course of treatment -- were  specific, clear and convincing.

**B.   ALJ Arno Provided Germane Reasons for Rejecting Plaintiff's Husband's Testimony**

The ALJ is required to give germane reasons for rejecting or partially rejecting lay witness testimony.  See Carmickle v. Comm'r v. Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008); Greger v.

Barnhart, 464 F.3d 968, 972 (9th Cir. 2006); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Smolen, 80 F.3d at 1288-89.

Plaintiff's husband completed Adult Third Party Function Reports dated September 4, 2008 and March 8, 2009, which essentially mirror, with less detail, the allegations Plaintiff made in her Pain Questionnaires and Function Reports.  (See AR 259-66, 289-96).

After briefly summarizing the statements by Plaintiff's husband, (see AR 1336 ["In these third party function reports, he indicated that the claimant required assistance to perform chores.  Further, these opinions alleged the claimant was only able to walk for short distances and drive when she felt well[.]"]), ALJ Arno made the following assessment of his testimony:

> These opinions, however, reflect the limitations expressed in the claimant's testimony, which the undersigned has found to be inconsistent with the overall evidence of record.  Moreover, the undersigned discounts these opinions because they inconsistently noted that the claimant was able to perform several activities of daily living, such as driving herself to run various errands and perform household tasks like cooking meals and washing dishes, albeit with breaks or while seated.  In addition, while a layperson can offer an opinion on a diagnosis, the severity of the claimant's symptoms, or the side effects of medications in relationship to the claimant's ability to work, the opinion of a layperson is far less persuasive on those same issues than are the opinions of medical professionals as relied on herein.  Most important, these opinions are not supported by the clinical or diagnostic medical evidence that is discussed elsewhere in this decision.  For example, these opinions are inconsistent with evidence suggesting that on examination the claimant has been observed as "alert" and "in no acute distress."  Further, she has exhibited full muscle strength in her upper and lower extremities ([AR 579]).  Additionally, she has been observed to squat without difficulty and walk stably with "greater flexion tha[n] she exhibited on specific lumbar [range of motion] testing" ([AR 758).  Accordingly, based on the above

specific reasons, the undersigned assigns partial weight to this opinion.

(AR 1336-37).

Since ALJ Arno provided clear and convincing reasons for finding Plaintiff's statements about her functional limitations not credible, her determination that the similar statements made by Plaintiff's husband were only entitled to partial weight was a germane reason for discounting Plaintiff's husband's testimony. See Valentine v. Commissioner, 574 F.3d 685, 694 (9th Cir. 2009)("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the claimant's wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the claimant's wife's] testimony.").

Moreover, ALJ Arno's determination that Plaintiff's husband's testimony was not supported by the objective medical evidence (discussed above) was a germane reason for finding that his testimony lacked credibility. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2015)(inconsistency with the medical evidence is a germane reason for discrediting the testimony of a lay witness); Lewis, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)("The ALJ properly discounted lay witness testimony that conflicted with the available medical evidence.").

Accordingly, ALJ Arno provided germane reasons for partially rejecting Plaintiff's husband's testimony.

## C.  ALJ Arno Properly Assessed the Opinions of Plaintiff's Treating Physicians and Psychologist

Plaintiff asserts that ALJ Arno failed to properly assess the opinions of her treating physicians, Drs. Amin and Lineback, and her treating psychologist, Dr. Flores.  (See Joint Stip. at 8-14).[5] Defendant asserts that ALJ Arno properly evaluated Dr. Amin's, Dr. Lineback's and Dr. Flores's opinions.  (See Joint Stip. at 15-22).

An ALJ must take into account all medical opinions of record. 20 C.F.R. § 404.1527(b).[6]  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also

---

[5]  Since Plaintiff's claim solely challenges ALJ Arno's evaluation of the opinions of Drs. Amin, Lineback and Flores, the Court will not discuss ALJ Arno's evaluation of the opinions of the medical expert (Dr. Nafoosi), Plaintiff's other treating physician (Dr. Huey), the consultative medical examiner (Dr. Siciarz), the State Agency medical consultants (Drs. Ligot and Mallare), the psychiatric consultative examiner (Dr. Gessessee) and the State Agency psychological consultants (Dr. Johnson and Ms. Abundes-Tienda)

[6]  Since Plaintiff filed her application before March 27, 2017, 20 C.F.R. § 404.1527 applies.  For an application filed on or after March 27, 2017, 20 C.F.R. § 404.1520c would apply.  20 C.F.R. § 404.1520c changed how the Social Security Administration considers medical opinions and prior administrative medical findings, eliminated the use of the term "treating source," and eliminated deference to treating source medical opinions.  See 20 C.F.R. § 404.1520c(a); L.R. v. Saul, 2020 WL 264583, at *3 n. 5 (C.D. Cal. Jan. 17, 2020); see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).

Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). The medical opinion of a treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency of the record." Revels v. Berryhill, 874 F.3d at 654; see also 20 C.F.R. § 404.1527(c)(2)-(6).

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir 2008); Lester, 81 F.3d at 830. If the treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" that are supported by substantial evidence in the record for rejecting the opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester, supra. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017)(citation omitted). Finally, an ALJ may reject an opinion of any physician that is conclusory, brief, and unsupported by clinical findings. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2015); Thomas v. Barnhart, 278

31

F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

    1.   Dr. Amin

Dr. Amin, an orthopedic surgeon and Plaintiff's treating physician in connection with her California Workers' Compensation case, completed an Initial Comprehensive Orthopedic Report following an examination of Plaintiff on November 2, 2004. (See AR 574-86). Plaintiff complained of neck, middle and lower back pain, right hand and wrist pain, numbness and tingling in her right hand and fingers, and "[s]ymptoms of depression, anxiety and insomnia, secondary to her alleged hostile work environment[.]" (AR 576). Dr. Amin diagnosed Plaintiff with "[c]ervical and lumbrosacral sprain/strain with myofascitis," "[t]horacic myofascitis," "[d]epression [secondary to alleged hostile work environment]," and "[s]prain/strain, right wrist," (AR 581), and opined that Plaintiff was "temporarily totally disabled" ("TTD") for 6 weeks. (AR 582).

From January 11, 2005 to August 23, 2005, Dr. Amin completed four Progress Reports. Based on Plaintiff's complaints, physical examinations, the results of electrodiagnostic studies of the bilateral upper and lower extremities, x-rays of the right hand, lumbar spine, thoracic spine and cervical spine, and the same diagnoses as those in the Initial Comprehensive Orthopedic Report, Dr. Amin opined that

Plaintiff was TTD from January 11, 2005 through October 1, 2005.  (AR 627-30).

ALJ Arno gave "little weight" to Dr. Amin's opinion that Plaintiff was TTD for approximately an 11-month period, finding that: (a) TTD was a Workers' Compensation law term of art (indicating that for a certain period a person is unable to return to the job being performed at the time of the injury) that was not "directly relevant" under Social Security law because there is a different criteria for a finding of disability, (b) Dr. Amin's opinion was not inconsistent with ALJ Arno's RFC determination which precludes Plaintiff from performing the work she was performing at the time of her Workers' Compensation injury, and (c) Dr. Amin did not identify any specific functional work limitations. (See AR 1333-34).

ALJ Arno properly noted that Dr. Amin's opinion that Plaintiff was TTD was specific to Plaintiff's Workers' Compensation claim and not binding on a determination about whether Plaintiff was disabled in this case.  See 20 C.F.R. §§ 404.1504 ("Other governmental agencies and nongovernmental entities . . . make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. [Such decisions are]. . . not binding on us and is not our decision about whether you are disabled or blind under our rules."); Alvarez v. Colvin, 562 Fed.Appx. 553, 553 (9th Cir. 2014)("Because the ALJ is obliged to make a disability determination based on social security law, the ALJ was not

33

bound by Dr. Larsen's finding that [the claimant] was temporarily totally disabled for purposes of California workers' compensation"); see also 20 C.F.R. §§ 404.1527(c)(6) ("[T]he amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has . . . are relevant factors that we will consider in deciding the weight to give to a medical opinion."), 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); Baroni v. Astrue, 2011 WL 2939405, *5 (C.D. Cal. July 18, 2011) ("The Court concurs with the ALJ that conclusory statements like those made by Dr. Haq in his February 26, 2003 Workers' Compensation report are not probative of whether a claimant is disabled from engaging in any substantial gainful activity or probative of a claimant's functional limitations.").

Moreover, ALJ Arno did not simply disregard Dr. Amin's opinion solely because it was generated in a Workers' Compensation matter, which would be improper. See Booth v. Barnhart, 181 F.Supp.2d 1099, 1105-06 (C.D. Cal. 2002) ("The ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings."; "[T]he ALJ must evaluate medical opinions couched in state workers' compensation terminology just as he or she would evaluate any other medical opinion."; "The ALJ must 'translate' terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the

implications of those opinions for the Social Security disability determination."; and "While the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence."; citations omitted); see also Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995)(as amended)("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."). Rather, ALJ Arno found that Dr. Amin's opinion was not necessarily inconsistent with ALJ Arno's Step Four finding that Plaintiff was unable to perform any past relevant work (AR 1337).

Finally, ALJ Arno properly found that Dr. Amin's opinion was entitled to less weight because Dr. Amin did not provide or identify any specific functional work limitations that would assist in the RFC determination. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)(noting that a treating physician must make "specific findings that [are] useful in the disability determination"); 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."; emphasis added); see also 20 C.F.R. § 404.1545(a)(1) ("Your impairment(s), and any related symptoms, such as pain, may cause

physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is the most you can still do despite your limitations.").

Thus, the ALJ provided clear and convincing and/or specific and legitimate reasons for rejecting Dr. Amin's opinion.

2.  <u>Dr. Lineback</u>

Dr. Lineback, who is Board Certified in Internal Medicine and Pulmonary Medicine, examined Plaintiff in connection with her Workers' Compensation claim on February 15, 2005.  On February 18, 2005, Dr. Lineback completed a Report in which he opined, <u>inter</u> <u>alia</u>, that Plaintiff "will require a preclusion from emotional distress to avoid any further aggravation of her gastrointestinal complaints due to gastric hyperacidity and irritable bowel syndrome."  (<u>See</u> AR 617-25).

ALJ Arno gave "partial weight" to Dr. Lineback's opinion.  (AR 1333).   While acknowledging that Dr. Lineback reasonably found a connection between emotional stress and [Plaintiff's] gastrointestinal complaints, ALJ Arno found that Dr. Lineback's opinion was not entitled to more weight to because "what might cause emotional distress could differ on a case by case basis" and "Dr. Lineback did not specify what should be precluded or the most [Plaintiff] was capable of despite the impairments."  (<u>Id.</u>).   ALJ Arno stated that the RFC determination limiting Plaintiff to simple and routine tasks that require only simple

36

decisions and precluding Plaintiff from work requiring a high-quota production-rate pace, (see AR 1327), sufficiently addressed stress caused by workload in the workplace.  (Id.).

ALJ Arno properly assessed partial weight to Dr. Lineback's opinion because of his failure to specify what Plaintiff should be precluded from doing in the workplace or what Plaintiff was capable of doing in the workplace despite her impairments.  See Meanel, 172 F.3d at 1114; 20 C.F.R. § 404.1527(a)(1).  As Defendant asserts (see Joint Stip. at 19), Plaintiff has failed to allege how ALJ Arno's RFC determination, which also limited Plaintiff to only occasional contact with the public and occasional interaction with coworkers (AR 1327), did not sufficiently accommodate Plaintiff's need to avoid workplace stress. See Sherman v. Colvin, 582 Fed.Appx. 745, 748 (9th Cir. 2014)(affirming ALJ's rejection of treating physicians' opinions based on claimant's failure to show how  RFC was inconsistent with treating physicians' opinions).

Therefore, ALJ Arno's reasons for rejecting Dr. Lineback's opinion were clear and convincing and/or specific and legitimate.

3.   Dr. Flores

Nelson J. Flores, Ph.D., a psychologist, treated Plaintiff in connection with her Worker's Compensation claim from December 9, 2004, to January 11, 2008, (See AR 589-93 [Psychological Testing Report dated

37

December 16, 2004], 596-697 [Psychological Medical-Legal Consultation Report dated January 13, 2005], 398-413 [Progress Reports dated March 9, 21, 2005, May 22, 2005, July 13, 2005, October 4, 19, 2005, November 15, 23, 2005, January 23, 2006, an undecipherable date in February 2006, March 7, 2006, April 9, 2006 (erroneously written as 2008), and May 31, 2006], 414-40 [Comprehensive Psychological Medical-Legal Permanent and Stationary Evaluation Report dated September 5, 2006], 441-56 [Progress Reports dated November 17, 2006, January 19, 2007, March 2, 2007, May 4, 2007, May 28, 2007, October 4, 2007, November 16, 2007, and January 18, 2008]).

On January 13, 2005, Dr. Flores completed a Psychological Medical-Legal Consultation Report following his examination of Plaintiff and review of the Psychological Testing Report dated December 16, 2004 (see AR 589-93). (See AR 596-607). Plaintiff complained of difficulty sleeping, nervousness, restlessness, headaches, chest discomfort, muscle tension, weakness throughout her body and in her legs, hot sensations over her body, trembling hands, body shakiness, unsteadiness, feeling fearful, heart pounding, nausea, indigestion, acid reflux, irritable bowel syndrome, constipation, diarrhea, low energy, sadness, irritability, difficulty controlling emotions and impulses, crying, difficulty concentrating and remembering, inability to relax, fears of the worst happening and of losing control, difficulty making decisions, socially withdrawn, inability to feel joy, and decreased sexual desire. (AR 601-02). Mental status examination revealed, inter alia, that Plaintiff was alert and oriented to time, place and person, Plaintiff's

affect was appropriate to thought content, thought processes were appropriate, logical and coherent, Plaintiff used normal speech and language, Plaintiff's "concentration was deficient during the evaluation," Plaintiff had "difficulty remembering recent dates, events and order of events," and Plaintiff had good insight and judgment. (AR 602-03).[7] Dr. Flores diagnosed Plaintiff with, inter alia, "major depressive disorder, single episode, mild; generalized anxiety disorder; and psychological factors affecting medical condition, irritable bowel syndrome." (AR 603). Dr. Flores opined that more than 51% of Plaintiff's anxiety and depressive disorders and her current psychological disability were directly related to her exposure to stress and sexual harassment commencing on or about 2001, her work overload commencing on or about February 2004, and the orthopedic injuries she sustained at work on July 15, 2004. (AR 605). While Dr. Flores provided treatment recommendations, Dr. Flores did not provide or specify any functional work limitations. (See AR 605-06).

Dr. Flores opined, in Progress Notes prepared in February, March, April, and May, 2006, that Plaintiff should "[r]emain off-work until next appt." (AR 408-13). Following his examination of Plaintiff, (see AR 414-40), Dr. Flores completed a Comprehensive Psychological Medical-Legal Permanent and Stationary Evaluation Report dated September 5,

---

[7]    In the "Summary and Discussion" section of the December 16, 2004 Psychological Report, Dr. Flores wrote: "The patient's attention, auditory memory and concentration appeared to be intact. The patient was alert and there was no indication of brain disorder nor neuropsychological impairment." (AR 592). The ALJ noted that this portion of the summary appeared to be inconsistent with the results of the mental status evaluation. (AR 1330).

2006, in which he diagnosed Plaintiff with: "Generalized Anxiety Disorder; Major Depressive Disorder, Single Episode, Mild, stable with medical treatment; Psychological Factors Affecting Medical Condition, Irritable Bowel Syndrome and acid reflux; Sleep Disorder Due to Chronic Pain, Insomnia Type; and Female Hypoactive Sexual Desire Disorder, Due to Chronic Pain, which developed from her exposure to stress and sexual harassment, her continuous orthopedic trauma injury commencing in or about August 2003, and her subsequent industrial accident of July 15, 2004, at her place of employment." (AR 416-17, 429-30). Dr. Flores opined, inter alia, that Plaintiff's current psychological condition was permanent and stationary, her current level of psychiatric disability was moderate (noting a Global Assessment of Function ("GAF") score of 46[8]), and she is a Qualified Injured Worker in need of vocational rehabilitation, but unable to successfully complete a vocational rehabilitation due to her current emotional and cognitive functions and

---

[8]   "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). The GAF includes a scale ranging from 0-100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (hereinafter DSM-IV). According to DSM-IV, a GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." Id. at 34 "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement." Garrison, 759 F.3d at 1003 n.4.

The Court notes that the DSM-V eliminated the GAF scale. See Olsen v. Comm'r Soc. Sec. Admin, 2016 WL 4770038, at *4 (D. Or. Sept. 12, 2016)("The DSM-V no longer recommends using GAF scores to measure mental health disorders because of their 'conceptual lack of clarity . . . and questionable psychometrics in routine practice.'"; quoting DSM-V, 16 (5th ed. 2013))).

her symptoms at this time.  (AR 416-18, 430-34).  Dr. Flores found Plaintiff's prognosis to be guarded because he did not believe her mental condition would significantly improve unless her physical condition significantly improved.  (AR 418-34).  Dr. Flores recommended, inter alia, that if Plaintiff returns to work "in any capacity" and her symptoms persist, (a) she "should not be placed to work in any position where she might be at a risk of being involved in an industrial accident if she becomes anxious and/or distracted (due to her nervousness, restlessness, difficulty concentrating, memory problems, persisting pain and headaches, difficulty controlling her emotions and impulses and difficulty making decisions), (b) she should not work at high altitudes, and (c) she "should not work in any position where she may be required to handle stress and/or conflicts on a regular basis while interacting with the public and/or coworkers."  (AR 434).

ALJ Arno gave "little weight" to Dr. Flores's various opinions because they were not helpful to, or not inconsistent with, the RFC determination.  (AR 1334-35).

ALJ Arno properly determined that Dr. Flores's opinion about Plaintiff's ability to successfully complete a vocational rehabilitation program - "the process of rebuilding work skills as part of recovering from an injury or illness," - was not relevant to the RFC determination.  (AR 1334).  See Meanel, 172 F.3d at 1114; 20 C.F.R. § 404.1527(a)(1).  Indeed, Plaintiff has failed to show how Dr. Flores's opinion about Plaintiff's inability to successfully complete a vocational

41

rehabilitation program was inconsistent with ALJ Arno's RFC determination.  See Sherman, 582 Fed.Appx. at 748.

Dr. Flores's opinions about Plaintiff's permanent and stationary mental condition and moderate level of psychiatric disability were based on his assessments of Plaintiff's abilities including a Description of Work Functions/Vocational Manifestation ("Work Functions document"), and a Permanent and Stationary Psychological Disability ("Psychological Disability document"), in which numerical scores were assigned to Plaintiff's ability to perform specific work functions, (such as ability to comprehend and follow instructions, perform simple and repetitive tasks, maintain work pace appropriate to given work load, perform complex or varied tasks, relate to other people beyond giving and receiving instructions, effectively influence people on a consistent basis, making generalizations, evaluations or decisions without immediate supervision, and accept and carry out responsibility for direction, control and planning), (see AR 436-37), and her levels of impairment relating to these functions were listed as "slight to moderate to moderate," "moderate," "moderate to moderate to severe," and "moderate to severe," (see AR 438-40).

As ALJ Arno noted (see AR 1334-35), Dr. Flores's assessments of Plaintiff's abilities were problematic and/or confusing:  (a) the scale provided in the Work Functions document contained a "4" for "moderate (marked impairment)," (AR 436), whereas the terms "moderate" and "marked" have specific definitions in the context of evaluating mental

impairments in Social Security disability cases (see 20 C.F.R. § 404, Subpart P, Appendix 1, Listing of Impairments 12.00F2, 12.04, 12.06); (b) in the Work Functions document, Plaintiff received a "5" (meaning, "severe [unable to perform work function]") for the sub-area of "React appropriately to criticism from a supervisor," the only "5" she received, but there was no explanation regarding why she received that score (see AR 437); and (c) in the Psychological Disability document, the terms "slight," "moderate" and "severe" were not defined, and the highest level of impairment assigned to a work function, namely, "moderate to severe," which was assigned to Plaintiff's ability to relate to other people beyond giving and receiving instructions (AR 43), was not clearly defined.

ALJ Arno properly found that the lack of clear definitions for such terms rendered Dr. Flores's opinions about Plaintiff's abilities unhelpful to the RFC determination. See Ford v. Saul, 950 F.3d 1141, 1156 (9th Cir. 2020)("[T]he ALJ determined that Dr. Zipperman did not provide useful statements regarding the degree of [the claimant's] limitations. Here, the ALJ found that Dr. Zipperman's descriptions of [the claimant's] ability to perform in the workplace as "limited" or "fair" were not useful because they failed to specify ["the claimant's] functional limits. Therefore, the ALJ could reasonably conclude these characterizations were inadequate for determining RFC."). ALJ Arno also properly found that the numerical scores given to specific abilities on the Work Functions Report were not adequately explained or supported. See Ford, 950 F.3d at 1155 ("An ALJ is not required to take medical

opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."); Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician including the treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."); see also 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.  The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").[9]

In addition, ALJ Arno properly discounted Dr. Flores's opinions about Plaintiff's limitations if she were to return to work, (AR 1335), noting that Dr. Flores's opinion about Plaintiff not having a job in which she handles stress was vague, (id. ["what is stressful is subjective and could differ on a case-by-case basis."]), and Dr. Flores did not specify what Plaintiff should be precluded from doing in the workplace (other than not working at heights) or what Plaintiff was capable of doing in the workplace despite her impairments. Id.. See Meanel, 172 F.3d at 1114; 20 C.F.R. § 404.1527(a)(1).  Moreover, ALJ

---

[9]    Although Dr. Flores stated that he considered the detailed post-treatment test results/data contained in a Psychological Test Report when rendering his opinions about, inter alia, Plaintiff's work restrictions and Plaintiff's work function abilities, and that the post-treatment Psychological Test Report would be sent as an addendum to the September 5, 2006 Comprehensive Psychological Medical-Legal Permanent and Stationary Evaluation Report (see AR 428-29), the Court has been unable to locate that Psychological Test Report in the record.

Arno also properly found that the RFC determination, which precluded Plaintiff from work requiring a high-quota production-rate pace, and limited Plaintiff to simple and routine tasks and only occasional contact with the public and occasional interaction with coworkers (AR 1327) sufficiently addressed Dr. Flores's workplace limitations. (AR 1335).

Finally, ALJ Arno's Step Four finding that Plaintiff could not perform her past relevant work was not inconsistent with Dr. Flores's opinions that Plaintiff should not return to the job she was performing at the time of her Workers' Compensation claim, a finding which Plaintiff does not appear to contest.

Therefore, the ALJ provided clear and convincing and/or specific and legitimate reasons for rejecting Dr. Flores's opinions.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 16, 2021.

/s/
_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE
